## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MELISSA BARON, *et al.*,

      Plaintiffs,

v.

                        Case No. 8:21-cv-02349-SCB-SPF

SYNIVERSE CORPORATION,

      Defendant.

_____

### DEFENDANT'S RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Syniverse Corporation ("Syniverse") moves to dismiss the Amended Consolidated Complaint  (Doc. 38) filed by Plaintiffs Melissa Baron, Olivia Enloe, Marco Lerra, John Pels, and Nicholas Yeomelakis ("Plaintiffs") for lack of jurisdiction and failure to state a claim.

April 1, 2022               Respectfully submitted,

**HOLLAND & KNIGHT LLP**
*/s/Anthony J. Palermo*
Jason H. Baruch (Fla. Bar No. 10280)
Anthony J. Palermo (Fla. Bar No. 98716)
Jessica S. Kramer (Fla. Bar No. 0125420)
100 North Tampa Street, Suite 4100
Tampa, FL 33602
Telephone: (813) 227-8500
jason.baruch@hklaw.com
anthony.palermo@hklaw.com
jessica.kramer@hklaw.com

*Attorneys for Syniverse Corporation*

## PRELIMINARY STATEMENT

Plaintiffs' Amended Consolidated Complaint (Doc. 38) (the "Amended Complaint") is their *fourth* collective attempt to assert viable claims against Syniverse. Now, *nearly six years* after the alleged data incident—and six months after Plaintiffs' first complaints were filed—Plaintiffs still have not suffered any actual injury or actionable damages. As a result, Plaintiffs' fourth attempt fails just like the first three, and their claims should be dismissed with prejudice.

While Plaintiffs' central allegations and speculation about a "Data Breach" largely remain the same and suffer the same fatal deficiencies, Plaintiffs have *removed* all claims that their "private information" and PII was subject to any unauthorized access as a result of a data incident. Plaintiffs also deleted all allegations about any risk of "identity theft" as well as other now-abandoned harms. Instead, Plaintiffs now only implausibly claim that their "private communications" were "compromised." Compared to previous pleadings, the Amended Complaint drops two of the plaintiffs; backs off allegations about the incident, identity theft, and damages, and asserts only more generalized claims; but again, fails to identify any actual or imminent harm.[1]

Plaintiffs have backtracked and what remains of their claims (and the

---

[1] The two former plaintiffs incredulously attempted to plead some potential, future harm was caused by Syniverse—despite the fact that they had also sued other companies for allegedly causing the same harm—but the Amended Complaint dropped these plaintiffs after Syniverse pointed out that their other lawsuits contradicted their claims before this Court. The Amended Complaint abandoned these plaintiffs and their claims, and in doing so, only serves to confirm the lack of any harm or causation and the implausibility of the remaining claims. (*See* Doc. 32 at 18-20; *see also* Docs. 47, 48.)

plaintiffs) should be dismissed with prejudice.  First, the remaining Plaintiffs still lack standing, as they have since they first filed suit in October of 2021. Their Amended Complaint makes clear that they have not suffered any injury and, therefore, they lack any actual case or controversy sufficient to invoke this Court's jurisdiction and also cannot state any actionable claim for damages.

Plaintiffs ignore the facts shown in Syniverse's prior motion to dismiss and the underlying documents incorporated by reference into the Amended Complaint and still can only speculate that certain events may (or may not) happen at some unspecified time in the future and that, depending upon potential actions of unidentified third-parties, certain harms could someday befall Plaintiffs. The Eleventh Circuit has rejected the same allegations of hypothetical harm that Plaintiffs assert, and instead held unequivocally that such claims must be dismissed because "[e]vidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344-45 (11th Cir. 2021).

Contrary to Plaintiffs' speculative and conclusory allegations, the content of text messages exchanged between individuals was *not* exposed or accessed here. Nor did the databases at issue contain any information identifiable to any specific individual. This explains why Plaintiffs did not—and cannot—plausibly allege that the incident resulted in any actual access to or misuse of Plaintiffs' "private communications" and why Plaintiffs still lack standing or any damages.

As an independent basis for dismissal, each cause of action fails to state a

plausible claim for relief.  Even assuming Plaintiffs could establish standing, this fourth complaint is rife with conclusory and contradictory allegations, implausible pleading, and lack of factual support as required by basic pleading standards.  As a result, the Amended Complaint must be dismissed with prejudice.

### FACTUAL BACKGROUND

Syniverse is a global communications company.  (Am. Compl. ¶ 5.)  Syniverse does not serve individual consumers, but instead acts as "a critical part of the global telecommunications infrastructure" by providing necessary services for commercial customers.  (*Id.*  ¶¶ 5, 30-33.)  Syniverse's customers are telecommunications carriers and business enterprises, including mobile network operators like AT&T and technology companies. (*Id.* ¶¶ 28-30.)

Syniverse processes and routes billions of text messages each year between different carriers, connecting billions of devices.  (*Id.*  ¶¶ 3, 33.)  Syniverse's messaging gateways translate carriers' different protocols to handle incompatibility and route messages across carriers so that end-users can exchange person-to-person ("P2P") messages between any network or service.  (*See id.* ¶¶ 3-4, 33; Proxy Stmt. at 266.)[2]

---

[2] Plaintiffs expressly refer to and rely upon a prior iteration of a preliminary proxy statement that Syniverse filed with the SEC. (*E.g.*, Am. Compl. ¶ 35.) Plaintiffs quote large excerpts from it, and it is central to Plaintiffs' claims because it describes the Data Incident and actions Syniverse took in response, among other things. *Id.* Because the proxy statement materials are incorporated by reference into the Amended Complaint, the Court can properly consider them at this stage as part of the pleadings. *See, e.g., Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Tsao*, 986 F.3d at 1343 (evaluating government report on data breaches that plaintiff "cites to" and explaining it "actually demonstrates why there is no 'substantial risk' of identity theft here"). The definitive proxy statement, cited herein, is available at: www.sec.gov/Archives/edgar/data/1839175/000119312522004492/d234831ddefm14a.htm (the

Separate from its messaging services, Syniverse provides carriers with platforms for the exchange of records for roaming of their end-users. This allows carriers to verify and settle the fees incurred for services provided to their end-users outside of their home coverage area by other carriers. Syniverse's electronic data transfer ("EDT") environment serves as a platform to facilitate this clearinghouse function. (Proxy Stmt. at 76-77.)

In late May 2021, Syniverse discovered unauthorized access to its technology systems (the "Data Incident") and immediately took action. (*See* Am. Compl. ¶¶ 8-9, 35; Proxy Stmt. at 76-77.) Subsequent investigation revealed that the unauthorized actor first gained access in 2016, but the intrusion was primarily limited to the EDT environment as well as several discrete databases. (*See* Am. Compl. ¶¶ 7, 35; Proxy Stmt. at 76.) Syniverse contained and remediated the access, promptly notified commercial customers, and cooperated with, and continues to cooperate with, law enforcement's investigation. (Am Compl. ¶¶ 35, 41; Proxy Stmt. at 76-77.) Contrary to Plaintiffs' surmise, but as conveyed in the Proxy Statement relied on and incorporated into the Amended Complaint, the limited access at issue did *not* involve P2P messages. (*See* Proxy Stmt. at 76-77.)

Plaintiffs are not Syniverse's customers, but are customers of Syniverse's customers—various cell phone carriers. (Am Compl. ¶¶ 15-21, 48, 80.)  Plaintiffs

---

"Proxy Statement"). M3-BRIGADE ACQUISITION II CORP., Definitive Proxy Statement (Form 14A) (Jan. 7, 2022). Alternatively, the Court can consider the Proxy Statement in evaluating Syniverse's factual attack on Plaintiffs' lack of standing, if necessary.

allege Syniverse failed to safeguard Plaintiffs' "private communications," which were "sent via SMS text messages" through and between these carriers. (*Id.* ¶ 1.)

## PROCEDURAL HISTORY

On October 5 and 7, 2021, two groups of a combined seven plaintiffs filed lawsuits against Syniverse relating to the Data Incident. (*See Baron v. Syniverse Corp.*, Case No. 8:21-cv-02349 (M.D. Fla.); *Mullen v. Syniverse Corp.*, Case No. 8:21-cv-02363 (M.D. Fla.) [hereinafter, "*Mullen*"].) These cases were later consolidated.  On December 3, 2021, the seven plaintiffs amended their claims and filed a consolidated complaint (Doc. 22.).  Notably, as compared to the plaintiffs' previous, separately filed complaints, the plaintiffs no longer alleged that they were victims of actual identity theft as a result of the Data Incident.  (*See, e.g.*, Compl. (Doc. 1) ¶¶ 103, 112, 140; *see also* Compl., *Mullen* (Doc. 1) ¶¶ 96, 105, 132, 133.)

Syniverse filed a motion to dismiss the Consolidated Complaint. (Doc. 32.) With that motion, Syniverse presented Plaintiffs with a declaration disproving their speculative theory that their "personal information" (including contents of their SMS text messages) was exposed during the Data Incident.  (*See* Doc. 32-1.)

In lieu of responding to Syniverse's Motion to Dismiss, five of the previously seven plaintiffs filed a second, further amended consolidated complaint—the Amended Complaint—now removing all allegations about exposure of their "personal information"; dropping two plaintiffs; and dropping one California Consumer Privacy Act ("CCPA") claim, while adding different causes of action (including a previously dropped claim of invasion of privacy). (*See* Doc. 38;

Compl., *Mullen* (Doc. 1) at 25-27.)[3] All of Plaintiffs' claims fail on various grounds.

## LEGAL STANDARD

Syniverse moves to dismiss the Amended Complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### A.   Rule 12(b)(1)

Plaintiffs bear the burden of establishing that subject-matter jurisdiction exists. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted); *see also Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 411-12 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  At the pleading stage, that burden requires Plaintiffs to "clearly allege facts demonstrating each element" of standing—a doctrine rooted in the constitutional limitation of federal-court jurisdiction to actual cases or controversies. *Spokeo*, 578 U.S. at 338 (internal marks and citations omitted).

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *DiMaio v. Dem. Nat. Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008).  As the Eleventh Circuit cautioned,

> [T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. ... If the

---

[3] The remaining plaintiffs now attempt to state claims against Syniverse for: negligence (Count I); breach of contract, as alleged third-party beneficiaries (Count II); breach of implied contract (Count III); unjust enrichment (Count IV); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V); invasion of privacy (Count VI); violation of California's Unfair Competition Law ("UCL"), based on alleged unlawful business practices (Count VII); and violation of the UCL, based on alleged unfair business practices (Count VIII).

> plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury.

*Id.* at 1301 (citations and marks omitted); *see also Pankey v. Aetna Life Ins. Co.*, 6:16-cv-1011-Orl-37GJK, 2017 WL 1089330, at *2 (M.D. Fla. Mar. 23, 2017) ("the Court **must** dismiss if the plaintiff -- who bears the burden of establishing jurisdiction -- fails to establish the existence of standing" (emphasis added; citations and marks omitted)).

Plaintiffs "must establish that they have standing to sue" -- an "irreducible constitutional minimum" -- by satisfying each of three distinct elements:

> The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

*Clapper*, 568 U.S. at 408 (citations and internal marks omitted); *Spokeo*, 578 U.S. at 338 (citations omitted). The failure to establish any of one of these requirements at the pleading stage -- including by alleging plausible facts to demonstrate each element -- is fatal. *See Tsao*, 986 F.3d at 1337; *Spokeo*, 578 U.S. at 338.[4]

The "first and foremost of standing's three elements" -- injury in fact -- itself has several requirements that must be satisfied for a plaintiff to demonstrate standing to bring a claim in federal court. *Id.* at 338-39. To establish an injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is both (a) "concrete and particularized," and (b) "actual or

---

[4] Plaintiffs cannot cure their standing deficiencies and otherwise satisfy their burden of establishing federal-court jurisdiction by pointing to other, yet unnamed individuals of the purported class that they presume they represent. *See, e.g., Spokeo*, 578 U.S. at 338 n.6.

imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560).

Challenges to subject matter jurisdiction under Rule 12(b)(1) can be made in the form of either facial or factual attacks. "Facial attacks" on a complaint require a court to determine if the plaintiff has set forth factual allegations that "plausibly and clearly" allege a concrete injury that is actual or imminent. *Tsao*, 986 F.3d at 1337-38 (citations omitted); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) ("[I]t's long been known that even at the pleading stage, the litigant must <u>clearly</u> and <u>specifically</u> set forth facts to satisfy the requirements of Article III." (emphasis added; citations omitted)).

In a "factual attack" under Rule 12(b)(1), "matters outside the pleadings, such as testimony and affidavits, are considered" and "the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999); *see also Grigorian v. FCA US LLC*, 838 Fed. Appx. 390, 392 (11th Cir. 2020) (explaining defendant "was asserting a 'factual attack'" at motion-to-dismiss stage, "such that the district court **<u>must</u>** look beyond the pleadings to evidence in the record") (emphasis added).[5]

### B.   <u>Rule 12(b)(6)</u>

Pursuant to Rule 12(b)(6), Plaintiffs have an "obligation to provide the

---

[5] Indeed, "[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—it's very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Scarfo,* 175 F.3d at 960. As a result, even "the existence of disputed material facts will <u>not</u> preclude the trial court from evaluating for itself the merits of jurisdictional claims" and "the trial court may proceed as it never could under 12(b)(6) *or* Fed. R. Civ. P. 56." *Id.* at 960-61 (emphasis added).

grounds for [their] entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The allegations must raise a right to relief above the speculative level. *Id.*

The Court should "begin [its] analysis by identifying 'pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Pankey*, 2017 WL 1089330, at *2 (quoting *Iqbal* and explaining that "[a]fter disregarding allegations that 'are not entitled to the assumption of truth,' the court must determine whether the complaint includes 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'").

## **MEMORANDUM OF LEGAL AUTHORITY**

Under both a facial and factual challenge to the Amended Complaint, Plaintiffs lack standing. Without standing, Plaintiffs' claims must be dismissed. Plaintiffs also fail to allege necessary elements and sufficient facts to support their claims. These pleading deficiencies provide another basis for dismissal.

## I.   **Plaintiffs Lack Standing.**

Under a facial attack, Plaintiffs' latest complaint fails to allege an injury in fact. Plaintiffs' vague and conclusory reference to harms they "have suffered and will suffer" fails, and none of their claimed harms give rise to cognizable injury. Plaintiffs fail to allege future harm that is fairly traceable to Syniverse, a separate

standing element that Plaintiffs do not establish and which also requires dismissal.

The Court need not reach Syniverse's factual attack in light of Plaintiffs' failure to plausibly plead unauthorized access or that any harm will befall them, but it confirms Plaintiffs cannot establish any injury. Under either argument, Plaintiffs lack Article III standing.  And, as this Court has observed, if Plaintiffs "lack[] standing, the Court lacks subject matter jurisdiction over the case"— requiring dismissal.  *See Brother v. Rossmore Tampa Ltd. P'ship*, 8:03CV1253T-24MAP, 2004 WL 3609350, at *2-5, n.3 (M.D. Fla. Aug. 19, 2004) (Bucklew, J.).

## A.   **Plaintiffs Fail to Allege an Injury in Fact (Facial Attack).**

Plaintiffs must establish an injury in fact to establish standing. Plaintiffs fail to allege any actual or imminent concrete injury.

### 1.   **Plaintiffs Fail to Allege a Concrete Injury.**

Plaintiffs' claimed "injuries" have *dramatically changed* over the course of their various pleadings. First, Plaintiffs initially alleged that they "have suffered and will suffer ... *actual identity theft*," albeit with no facts in support of the allegation whatsoever. (*See, e.g.*, Compl. (Doc. 1) ¶¶ 103, 112, 140; Compl., *Mullen* (Doc. 1) ¶¶ 96, 105, 132, 133.)   Next, in their first amended and consolidated complaint, Plaintiffs alleged a slew of claimed harms, including lost market value of their PII and out-of-pocket expenses.  (*See* Consol. Compl. (Doc. 22) ¶¶ 117, 126, 136, 153.)   Now, for the bulk of their claims, Plaintiffs allege that their primary injury is "the continued and increased risk to their private communication."  (Am. Compl. ¶¶ 101, 110, 121, 137.)   For two claims, Plaintiffs also allege "anxiety,

emotional distress, loss of privacy, and other economic and noneconomic losses" and for two others, again without any plausible support, "lost money or property." (*See id*. ¶¶ 102, 111, 153, 159.)[6]  None of the alleged injuries confer standing.

A.  <u>"Continued and Increased Risk" to "Private Communications"</u>

For six of their eight claims, Plaintiffs allege a continued and increased risk to their "private communications," which Plaintiffs claim are unencrypted and "available" for unknown third parties to access because the communications "*may*" remain in Syniverse's possession and somehow could be "subject to" some unspecified disclosure at some undetermined point in the future. (*See, e.g*., *id*. ¶¶ 101, 110, 121.)  These allegations fail to establish a concrete injury, because "conclusory allegations of an 'elevated risk of identity theft' -- or a 'continuing increased risk' of identity theft -- '[are] simply not enough' to confer standing." *See Tsao*, 986 F.3d at 1343 (citing *Muransky*, 979 F.3d at 933).

If conclusory allegations of an elevated risk of *identity theft* are insufficient, as *Tsao* and *Muransky* confirm, then further attenuated allegations of an elevated risk that Plaintiffs' "private communications" could be subject to vaguely alleged future events of unspecified "access," "abuse," or "disclosure" must likewise fail. *See id*.; *see also Stanberry v. Fox*, 2:21-CV-826-JES-NPM, 2021 WL 5999308, at *1-2 (M.D. Fla. Dec. 20, 2021) (dismissing complaint because the plaintiff "does

---

[6] As a threshold, fatal deficiency, Plaintiffs' inadequate "have suffered and *will* suffer" allegations throughout the Amended Complaint fail to establish what injuries (if any) Plaintiffs allegedly have suffered -- versus those injuries Plaintiffs hypothesize that they "will suffer" sometime in the future.

not have standing to bring … suit based upon the increased risk of identity theft caused by the data breach.").

B.    "Other Forms of Injury"

For Plaintiffs' negligence and third-party beneficiary claims, Plaintiffs allege that they suffered "anxiety, emotional distress, loss of privacy, and other economic and noneconomic losses." (*E.g.*, Am. Compl. ¶ 102.)  Aside from being conclusory, these allegations do not establish a concrete injury.  *See, e.g., Preisler v. Eastpoint Rec. Grp., Inc.*, 20-CV-62268-RAR, 2021 WL 2110794, at *5 (S.D. Fla. May 25, 2021) (a plaintiff "cannot rely solely on his feelings of distress, confusion, or anxiety to fabricate concrete injury"); *Eldridge v. Pet Supermkt. Inc.*, 446 F. Supp. 3d 1063, 1071 (S.D. Fla. 2020) ("plaintiff's alleged loss of privacy and wasted time … are not qualitatively 'the kind of harm that constitutes an injury in fact'") (citing *Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019)); *Grigorian*, 838 Fed. Appx. at 392, 394 (affirming dismissal despite plaintiff alleging "harm, including invasion of her privacy, aggravation, annoyance, and intrusion on seclusion").

C.    "Lost Money or Property"

For their UCL claims, Plaintiffs Baron and Pels can establish standing *only if* they have (1) suffered an injury in fact <u>and</u> (2) lost money or property as a result of the unfair competition.  *See Durell v. Sharp Healthcare* 183 Cal.App.4th 1350, 1359, 108 Cal.Rptr.3d 682, 691 (2010).   Therefore, standing requirements under the UCL are even *more stringent* than federal standing requirements, because a UCL plaintiff must make a twofold showing of an "injury in fact" that specifically

involves "lost money or property *caused by unfair competition*." *Gray v. Dignity Health* 70 Cal.App.5th 225, 237, 285 Cal.Rptr.3d 343, 353 (emphasis added) *reh'g denied* (Nov. 8, 2021), *review denied* (Jan. 26, 2022).

Baron and Pels allege, in conclusory fashion, that they "were injured and lost money or property, including but not limited to the price received by [Syniverse] for the services." (Am. Compl. ¶¶ 153, 159.) Plaintiffs do not allege that *they* paid Syniverse for these services, or otherwise include *any* facts supporting their claim of lost money or property.[7] In actuality, Plaintiffs are customers of Syniverse's customers—various cell phone carriers. (Am. Compl. ¶¶ 15-21, 48, 80.) Baron and Pels' claims are implausible here, and they fail to demonstrate their standing to assert any UCL claims. *See Spokeo*, 578 U.S. at 338 (requiring that plaintiffs "clearly allege facts demonstrating each element" of standing).

D.     Nominal Damages

Plaintiffs claim nominal damages as a last resort. Nominal damages are a form of relief a plaintiff may recover only in certain, limited instances – where, unlike here, a harm has been suffered and *shown* by an aggrieved party. *Wilson v. Univ. Cmty. Hosp., Inc.*, 101 So. 3d 857, 858–59 (Fla. 2d DCA 2012) ("[T]he Florida Supreme Court has held that nominal damages *may* be recovered in cases **where there is proof of injury** but there is no evidence or insufficient evidence

---

[7] In just *one* of Plaintiffs' 161 allegations, and in relation to a different cause of action, Plaintiffs allege that, despite their lack of a direct relationship with Syniverse, they "conferred a monetary benefit on" Syniverse in exchange for Syniverse's services. (Am. Compl. ¶ 124.) The Court should reject Plaintiffs' attempt to manufacture standing in this way.

to show the actual amount of damages. ...We reject the physicians' argument that nominal damages must be awarded as a matter of law because it conflicts with the rule delineated by the Florida Supreme Court" (citing *Hutchison v. Tompkins,* 259 So. 2d 129, 132 (Fla. 1972)) (former emphasis in original; later emphasis added)).

Plaintiffs' meritless assertion of entitlement to "nominal damages" does not establish a concrete injury. "[A] request for nominal damages satisfies the *redressability* element of standing." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (emphasis added). But redressability is distinct from a concrete injury. As the Supreme Court has explained, a claim for nominal damages does <u>not</u> "guarantee[] entry to court." *Id*. "It remains for the plaintiff to **establish** the other elements of standing (such as a *particularized injury*), plead a cognizable cause of action, ... and meet all other relevant requirements." *Id*. (citations omitted; emphasis added). Plaintiffs' claimed "nominal damages" fail to meet basic standing requirements. *See id*.  As such, Plaintiffs fail to allege any concrete injury.

### 2.    Plaintiffs Fail to Allege an Imminent Injury.

Plaintiffs do not (and cannot) establish an imminent injury either. As Plaintiffs allege in their latest complaint, the Data Incident occurred "beginning in May 2016." (Am. Compl. ¶ 8.)  To this day, ***almost six years later***, *none* of the Plaintiffs allege any actual misuse of their "private communications." The fact that it has been almost six years, and still, no harm has occurred makes it legally implausible that some harm will now suddenly befall Plaintiffs. *See Stapleton*, 2017 WL 3732102, at *3 ("Plaintiffs are unable to identify ... Sensitive Information

misused as a result of the data breach ... [which] indicates that there is no substantial risk of imminent injury."); *Torres*, 195 F. Supp. 3d 1278, 1283 (M.D. Fla. 2016) (number of plaintiffs who experienced fraudulent charges is "influential factor" in determining whether future harm is "certainly impending"); *In re Brinker Data Incident Litig.*, 3:18-CV-686-J-32MCR, 2020 WL 4287270, at *3 (M.D. Fla. July 27, 2020) ("This string of contingencies is too speculative to satisfy Article III standing requirements; moreover, it has not happened *in the more than two years* since the original breach.") (emphasis added).[8]

The Proxy Statement Plaintiffs relied upon and incorporated by reference into their Amended Complaint -- which controls over their conclusory allegations -- further confirms the implausibility of any imminent harm. *Celestine v. Capital One*, 741 Fed. Appx. 712, 713 (11th Cir. 2018) ("Where exhibits are submitted that contradict the alleged facts, the exhibits control."). As Syniverse disclosed in its Proxy Statement, "there has been no attempt to monetize the unauthorized activity." (Proxy Stmt. at 77.) This is unsurprising, as "most data breaches have not resulted in detected incidents of fraud." *Tsao*, 986 F.3d at 1343 (citing U.S. Gov't Acct. Off., GAO-07-737, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is*

---

[8] Notably, the Eleventh Circuit reiterated in *Tsao* that *Clapper* established a particularly "high standard for the risk-of-harm analysis" in the context of allegations of future identity theft. *Tsao*, 986 F.3d at 1339 (quoting *Muransky* and explaining that, in the decision, "[t]his Court, sitting *en banc*, vacated the District Court's order approving the settlement and remanded with instructions to dismiss for lack of standing," after reasoning, in relevant part, that plaintiff's "naked allegations that he and the class were exposed to an 'elevated risk' of identity theft—but not that he and the class were ever actually the victims of identity theft—were not enough to confer standing").

*Unknown (2007)*, www.gao.gov/assets/270/262899.pdf).[9]  Coupled with lack of any alleged imminent or impending injury, these incorporated documents confirm Plaintiffs face no actual nor imminent harm, and that Plaintiffs fail to establish standing. *See Tsao*, 986 F.3d at 1343.

**B.      Plaintiffs Fail to Allege any Fairly Traceable Harm.**

In addition to failing to allege an injury in fact, Plaintiffs fail to establish a harm that is fairly traceable to Syniverse's alleged conduct. "Article III standing requires a 'causal connection between the injury and the conduct complained of.'" *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) ("Following *Lujan*, we've said that 'an injury is not fairly traceable to the actions of a defendant if caused by the independent action of some third party not before the court.'").  As here, a "speculative chain of possibilities does not establish that injury ... is fairly traceable" to the defendant's conduct. *Clapper*, 568 U.S. at 414.

The Amended Complaint fails to satisfy the "causation element of Article III standing" because it does not "plead and prove causation"—specifically that Syniverse caused Plaintiffs' purported injuries. *See Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1266 (11th Cir. 2011) ("Hollywood

---

[9] Tellingly, Plaintiffs previously cited to this GAO report undermining their claims in their prior complaints—only to attempt to escape its clear implications, which mandate dismissal, by dropping any reference to the report in the Amended Complaint only *after* Syniverse identified the GAO report as a basis for dismissal in *Tsao*.  (*See* Compl., *Mullen* (Doc. 1) at 12; *see also* Compl. (Doc. 1) at 12-13; Consol. Compl. (Doc. 22) at 20-21; Doc. 32 at 16-17.)  This desperate effort makes no difference as the Court must still look to *Tsao*.  The Court can also take judicial notice of the GAO Report—and Plaintiffs can hardly be heard to complain as they previously cited it as authoritative to this Court.

failed to satisfy this burden because it did not allege that the Secretary had caused Hollywood any injury. For that reason, the district court should have dismissed the complaint of Hollywood for lack of subject matter jurisdiction."); *Lujan,* 504 U.S. at 560, 562 (rejecting standing that "depends on the unfettered choices made by independent actors not before the court") (marks omitted).

Plaintiffs allege only a "speculative chain of possibilities," based on hypothetical, future harms that imagine layers of facts about what *could* happen to Plaintiffs' "private communications" (whatever those communications are) after hypothetical conduct of unidentified third-parties not before this Court. (*See, e.g., Am. Compl.* ¶¶ 13, 75.) Plaintiffs thus fail to plausibly allege a fairly traceable injury as required for standing. *See, e.g., Madstad Eng'g, Inc. v. U.S. Patent & Trademark Office*, 8:12-CV-1589-T-23MAP, 2013 WL 3155280, at *6 (M.D. Fla. May 8, 2013) (relying upon *Clapper* "despite differences in the particulars of the respective actions" and dismissing complaint arising from "prospective actions of putatively ruthless IP thieves" because "actualization of the conjectural events depends upon the contingent action of a third party (an 'independent actor not before the court')"), *aff'd,* 756 F.3d 1366 (Fed. Cir. 2014).[10]

---

[10] Further, as noted, the two former plaintiffs' effort to assert an action against, and pin un-suffered harm on, Syniverse as well as multiple other purportedly culpable companies confirms the implausibility of the claims here. *See, e.g., Carter v. Sw. Airlines Co.*, 8:20-CV-1381-T-02JSS, 2020 WL 7334504, at *4 (M.D. Fla. Dec. 14, 2020) (explaining the "facts make several of Plaintiff's claims implausible," including that defendant "caused" or "created a material risk of economic harm," and "[t]he claim therefore cannot stand"). (*See also* Doc. 32 at 18-20.)

### C.   **Plaintiffs Cannot Establish any Actual Injury (Factual Attack).**

On its face, Plaintiffs' Amended Complaint must be dismissed because Plaintiffs have not established standing. Further, a factual attack, which subjects Plaintiffs' claims to an even more stringent standard of review, also requires dismissal *with prejudice* because Plaintiffs will *never* be able to establish an injury in fact caused by Syniverse.[11]

Plaintiffs allege that their P2P text message content was compromised as a result of the Data Incident. (*See* Am. Compl. ¶ 11-12.)  However, no actual P2P messages were implicated by the limited, unauthorized access to Syniverse's databases -- and none of the other records are identified to any specific, individual. (*See* Syniverse Corp. Decl. ¶¶ 7-12; *see also* Proxy Stmt. at 77.)[12]  Contrary to Plaintiffs' unfounded speculation about what may have been implicated by the Data Incident, **_none_** of the discrete databases involved contained any P2P text messages. (*Compare id. with* Am. Compl. ¶ 1.)

In sum, as already made public in the Proxy Statement, none of the information accessed in the Data Incident is linked to Plaintiffs, involved their P2P

---

[11] Syniverse's factual attack here is made in the alternative to its facial attack on Plaintiffs' Amended Complaint. The Court can dismiss Plaintiffs' Amended Complaint solely based on the insufficiency of Plaintiffs' allegations of injuries and causation.

[12] Phone numbers, standing alone, do not provide enough information to identify the individual associated with the phone number. *See, e.g., ACA Int'l v. Fed. Communications Comm'n*, 885 F.3d 687, 705 (D.C. Cir. 2018) ("[T]here is no dispute that millions of wireless numbers are reassigned each year."). Even phone carriers cannot verify with certainty the identity of the user of a subscriber's cellular phone number. *See, e.g., Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 457 (M.D. Fla. 2018) (noting expert report that "there is no public database of cell phone subscribers and private services are often inaccurate and incomplete, and *even a carrier-by-carrier investigation* would not ensure accuracy").

texts, or could cause them any injury.  Contrary to their surmise, and regardless of their belated, continuing attempts to change their claims, Plaintiffs could not possibly have suffered any injury ***as of*** the date they filed their initial complaint. *See Brother*, 2004 WL 3609350, at *5 ("The determination of whether a plaintiff has standing to bring suit is made as of the date the lawsuit is commenced. Therefore, any attempts to achieve or bolster standing after the suit is filed will not be effective.").  This defect cannot be cured and forecloses Plaintiffs' claims on behalf of themselves or any putative class. *See id.*; *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) ("It is well-settled that if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (marks omitted).

## II.    **Plaintiffs Fail to State a Claim upon which Relief Can Be Granted.**

Because Plaintiffs lack Article III standing, the Court need not even consider whether Plaintiffs sufficiently alleged a viable cause of action against Syniverse under Rule 12(b)(6). *See, e.g., Collectarius Fin., LLC v. Statebridge Co., LLC*, 8:18-CV-137-T-24, 2018 WL 807041, at *1 (M.D. Fla. Feb. 9, 2018) (Bucklew, J.).  To the extent the Court reaches the substance of Plaintiffs' claims, Rule 12(b)(6) provides another basis for dismissal.

### A.    **Plaintiffs Fail to State a Negligence Claim.**

Plaintiffs claim they provided "highly confidential private communications" to their cell phone carriers who provided the information to Syniverse and,

therefore, Syniverse had a duty to safeguard this information. (Am. Compl. ¶¶ 47-49.) Plaintiffs claim this duty arose from a "special relationship" between Plaintiffs and Syniverse. (*Id.* ¶ 80.) In actuality, Plaintiffs placed texts with their cell-phone carriers, which passed non-P2P information through Syniverse to other carrier-customers. (*See id.* ¶ 4.) Accordingly, Plaintiffs' negligence claim fails as a matter of law for multiple, independent reasons.

First, contrary to any claim of duty, Plaintiffs have not sufficiently alleged that any sensitive information was contained in the messages provided to Syniverse. Instead, Plaintiffs only allege that Syniverse has knowledge of the "sensitivity of the private communications" and the "types of harm" that Plaintiffs "*could and would* suffer" if those communications were wrongfully disclosed. (*Id.* ¶ 75 (emphasis added).) Plaintiffs' "anything is possible" pleading is insufficient. Based on scant, bald allegations that their "private communications" *may* have been transmitted and further *may* someday be accessed and used by *others*, Plaintiffs fail to plausibly allege either a duty or causation. (*See id.* ¶¶ 75, 95, 101.) There are simply no facts to support Plaintiffs' allegations that "highly confidential private communications" has been wrongfully disclosed, or that the supposed "private communications" contained any sensitive information, or that the disclosed information could be used to identify Plaintiffs. *See, e.g., Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) ("Duty exists as a matter of law

and is not a factual question for [a] jury to decide.") (citation omitted).[13]

Plaintiffs also fail to allege a nexus between their alleged harms and the Data Incident -- "beyond allegations of time and sequence" -- as required for causation. *See Resnick*, 693 F.3d at 1326. Here, Plaintiffs only assert that their private communications "were accessed as the proximate result" of, and their "injuries were proximately caused" by, Syniverse. (Am. Compl. ¶ 95.) These conclusory allegations of causation (*i.e.*, "a data breach happened and then I suffered some harm") are insufficient to support Plaintiffs' negligence claim. *See, e.g., Hall v. HSBC Mortg. Services, Inc.*, 581 Fed. Appx. 800, 803 (11th Cir. 2014).

Finally, as discussed above, Plaintiffs fail to allege any cognizable damages. Plaintiffs' allegations of anxiety, emotional distress, and loss of privacy, without more, are insufficient. *See Preisler*, 2021 WL 2110794, at *5; *Eldridge*, 446 F. Supp. at 1071; *see also Meeks v. Ocwen Loan Servicing LLC*, 681 Fed. Appx. 791, 792-93 (11th Cir. 2017) (affirming dismissal *with prejudice* for lack of standing and, alternatively, "because [plaintiff] did not suffer any compensable damages").

### B.     Plaintiffs Fail to State a Breach of any Contract.

### 1.     Plaintiffs Are Not Third-Party Beneficiaries.

Plaintiffs allege that Syniverse entered into "contracts with its cellular provider and wireless carrier customers to provide services essential to Plaintiffs."

---

[13] Plaintiffs fail to plausibly plead any standard of care -- let alone a basis for a standard of care that governed Syniverse's actions -- for their negligence claim. Instead, Plaintiffs plead the *opposite*, including a quote about how no standard yet exists and that "[t]he FCC **needs to** ... *set* mandatory cybersecurity *standards for this industry*." (Am. Compl. ¶ 40 (emphasis added).)

(Am. Compl. ¶ 106.)  Plaintiffs allege that they did not attach these contracts to their Amended Complaint because they do not possess them. (*Id*.) And yet, Plaintiffs allege in conclusory fashion that they are intended third-party beneficiaries of these never-before-seen contracts.  (*See id.* ¶ 107.)

Plaintiffs fail to support these implausible allegations. *See, e.g., Steadfast Ins. Co. v. Corp. Prot. Sec. Group, Inc.*, 554 F. Supp. 2d 1335, 1337–38 (S.D. Fla. 2008) (dismissing third-party beneficiary breach of contract claim where insurance company asserted that subrogating party "is a third party beneficiary to the agreement," but "does not, however, plead sufficient factual allegations to sustain that contention").  The Court should, therefore, dismiss Plaintiffs' claim for failure to meet basic pleading requirements.

Further, the underlying agreements with each carrier expressly provide that there are no third-party beneficiaries to these contracts.[14] This clause is enforceable and requires dismissal *with prejudice. See Smith v. Rainey*, 747 F. Supp. 2d 1327, 1341–42 (M.D. Fla. 2010) (Bucklew, J.) ("The contract between DCF and HKI expressly states: '[t]his contract shall not be construed as providing any enforceable right to any third-party.' In light of this unambiguous expression of the parties' intent, Counts II–IV are subject to dismissal.") (citation omitted).[15]

---

[14] Plaintiffs claim to be customers of T-Mobile, Verizon, and AT&T. (Am. Compl. ¶¶ 15-21.) Syniverse's agreements with these carriers contain unequivocal "No Third-Party Beneficiaries" clauses barring Plaintiffs' claims. Syniverse previously filed the redacted contracts under seal, and these contracts defeat Plaintiffs' third-party beneficiary claims. (*See* Doc. 31.)

[15]  Should the Court determine that Plaintiffs are third-party beneficiaries, Syniverse reserves the right to enforce other terms contained within the contracts, including but not limited to arbitration clauses.

### 2.    Plaintiffs' Implied Contract Claims Fail.

Plaintiffs allege Syniverse breached an implied contract with Plaintiffs. According to Plaintiffs, Syniverse "published security-related representations on its website," and Plaintiffs would not have entrusted their cell phone carries with "private communications" if Plaintiffs knew those security-related representations were not accurate. (Am. Compl. ¶¶ 116-17.)

To establish an implied-in-fact contract, Plaintiffs must show: "(1) a mutual intent to contract; (2) consideration; and (3) an offer and acceptance." *Strickland v. United States*, 382 F. Supp. 2d 1334, 1343 (M.D. Fla. 2005). To start, Plaintiffs do not even allege that they were aware of the representations that gave rise to an implied contract, nor that they saw any such representation before separately subscribing to their wireless carriers (or that they were even aware of Syniverse). Plaintiffs also fail to allege any intent to form a contract, provide consideration, or send an offer or acceptance. Accordingly, there are *no* facts to support a contract to safeguard private communications, so Plaintiffs "failed to plausibly allege an implied contract claim." *Stephens v. Availity, L.L.C.*, 5:19-CV-236-OC-30PRL, 2019 WL 13041330, at *6 (M.D. Fla. Oct. 1, 2019).

Beyond these deficiencies, as with Plaintiffs' other causes of action, conclusory allegations of proximate cause and damages warrant dismissal. *See Hall*, 581 Fed. Appx. at 803 ("Hall's assertions of causation and damages amount only to conclusory statements and legal conclusions couched as factual allegations and, as such, do not suffice."). And, as Plaintiffs affirmatively allege that they are

"customers of Defendant's customers," they confirm that there is no direct relationship between them and Syniverse. (*See* Am. Compl. ¶ 48.) As such, "there is no relationship between the parties in this case that would allow the Court to imply a contract"—further requiring dismissal of this claim as a matter of law. *See Stephens*, 2019 WL 13041330, at *6.

## C.   <u>Plaintiffs Fail to Allege Unjust Enrichment.</u>

Plaintiffs correctly describe Syniverse's customers as telecommunications carriers and businesses—not individuals like Plaintiffs. (Am. Compl. ¶¶ 28-30.) Then, in an abrupt about-face, Plaintiffs try to manufacture an unjust enrichment claim by implausibly alleging that, despite their lack of a direct relationship with Syniverse, they "conferred a monetary benefit on" Syniverse in exchange for Syniverse's services. (*Id.* ¶ 124.) Plaintiffs claim Syniverse "accepted the money from Plaintiffs" and this money was supposed to be used "to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiffs." (*Id.* ¶¶ 124-25.) These allegations are inconsistent with others in the Amended Complaint and are, simply, untruthful.

To establish an unjust enrichment claim, however, "the plaintiff must ***directly*** confer a benefit to the defendant." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (quoting *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)) (emphasis added). Plaintiffs allege that they were "overpaying Defendant [Syniverse]'s customers"— *not* Syniverse —"for the services they purchased." (Am. Compl. ¶ 126.)  At most, Plaintiffs alleged an *indirect* benefit to Syniverse "and, as

such, cannot satisfy the first element of an unjust enrichment claim." *See Marrache*, 17 F.4th at 1102 (affirming dismissal *with prejudice* of unjust enrichment claim).

Additionally, Plaintiffs merely recite the elements of unjust enrichment with no factual support. In doing so, Plaintiffs fail to plead facts demonstrating a plausible claim. *See, e.g., In re Brinker Data Incident Litig*., 3:18-CV-686-J-32MCR, 2020 WL 691848, at *11 (M.D. Fla. Jan. 27, 2020) ("Plaintiffs allege only conclusory statements regarding Brinker's knowledge and acceptance of the benefit.... However, there are no factual allegations supporting these elements. Thus, the unjust enrichment claim must be dismissed."). As Plaintiffs provide only contradictory and conclusory allegations, the claim must be dismissed.

### D.   <u>Plaintiff Lerra Fails to Allege a Violation of FDUTPA.</u>

Plaintiff Lerra attempts to bring a FDUTPA claim, but the claim fails as a matter of law. To state a FDUTPA claim, Lerra must allege "actual damages." *Marrache*, 17 F.4th at 1097. "Actual damages" do not include consequential damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006); *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 263 (Fla. 2d DCA 2004) ("[S]pecial, consequential, and incidental damages ... are not available under FDUTPA.").

Lerra fails to allege damages recoverable under FDUTPA. (*See* Am. Compl. ¶ 137.) *See also Marrache*, 17 F.4th at 1098 ("FDUTPA 'does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment.'"); *In re Brinker Data Incident Litig*., 2020 WL

691848, at *13 (dismissing FDUTPA claim because plaintiff's claims that she "lost the ability to accrue cash back rewards, lost time monitoring her accounts and contacting her bank, and overpaid for Chili's goods and services," are consequential -- not actual -- damages). Lacking any claim of actual damages, and as discussed above, lacking allegations to plausibly demonstrate that any harms were caused by Syniverse, Lerra has no FDUTPA claim. *See Marrache*, 17 F.4th 1084, 1098.[16]

### E.    Plaintiffs Baron and Pels Fail to Allege an Invasion of Privacy.

Plaintiffs Baron and Pels bring a claim for invasion of privacy. (Am. Compl. at 148.)[17] Invasion of privacy is an intentional tort; it requires a showing that someone "**intentionally intruded** into an area in which [another] had a legitimate expectation of privacy." *Doe v. City & County of San Francisco*, C10-04700 TEH, 2011 WL 6012934, at *2 (N.D. Cal. Dec. 1, 2011) (emphasis added). To state a claim for invasion of privacy, a plaintiff must allege that *the defendant* intentionally intruded and that the intrusion would be highly offensive to a reasonable person. *Belluomini v. Citigroup, Inc.*, CV 13-01743 CRB, 2013 WL

---

[16] Further, even if Lerra could plead actual damages, his failure to plead a cognizable injury, as discussed above, likewise dooms his FDUTPA claim. *In re Brinker Data Incident Litig.*, 2020 WL 4287270, at *4 (dismissing FDUTPA claim because "Plaintiffs have failed to allege a threat of future harm beyond a speculative level"). Lerra's failure to plausibly allege that he has a relationship with Syniverse, is its direct consumer, or that Syniverse's representations were directed to him—when he correctly pleaded that Syniverse does not do business with individual consumers but instead provides services to commercial carriers and enterprises—is also fatal to his FDUTPA claim. *See Stephens*, 2019 WL 13041830, at *7.

[17] Tellingly, these plaintiffs asserted an invasion of privacy claim in their first complaint, dropped the claim in the consolidated complaint, but now try to revive the previously abandoned claim.

3855589, at *6 (N.D. Cal. July 24, 2013).  The cause of action holds the intentional intruder liable. *Id.* (explaining the elements of an invasion of privacy claim, including that "*defendant* intentionally intruded"); *see also* Restatement (Second) of Torts § 652B (1977)) ("One who intentionally intrudes . . . is subject to liability to the other for invasion of his privacy.").[18]  Here, Plaintiffs allege that *someone else* interfered with Plaintiffs' privacy. (*See* Am. Compl. ¶¶ 7, 8 (describing an unauthorized actor who accessed Syniverse's systems).)  Plaintiffs do not plead that Syniverse intentionally interfered with Plaintiffs' seclusion, and Baron and Pels' invasion of privacy claim fails.[19]

Baron and Pels also fail to establish how the Data Incident, which allegedly involved a compromise of their "private communications," is an "egregious breach of the social norms underlying the privacy right." *See Belluomini.*, 2013 WL 3855589, at *6; *see also Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690 (N.D. Cal. 2021) ("California courts have not recognized a general privacy interest in communications."). Overall, there is a "high bar" for pleading an invasion of

---

[18] Syniverse assumes that Baron and Pels wish to bring a claim based on intrusion upon seclusion, though they do not specify the basis for their invasion of privacy claim. It is unclear under what legal theory, as well as what choice of law, Baron and Pels attempt to bring their claim. Syniverse cites to California law, given Baron and Pels attempted to plead other claims under it (*see infra*); but, the result is the same under California or Florida law: the claim must be dismissed. *See, e.g., Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997) ("Florida courts have recognized invasion of privacy to be an intentional tort."); *Hammer v. Sorensen*, 824 Fed. Appx. 689, 695 (11th Cir. 2020) (affirming dismissal and citing Restatement (Second) of Torts § 652B (1977), but explaining "[n]evertheless, the Supreme Court of Florida has construed the tort of intrusion upon seclusion even more narrowly than the Restatement provides").

[19] Common sense also dictates Syniverse did not intentionally allow unauthorized access to its databases. *Iqbal*, 556 U.S. at 663–64 ("determining whether a complaint states a plausible claim is context specific, requir[es] the reviewing court to draw on its experience and common sense.").

privacy claim. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion of privacy claim *with prejudice*). Baron and Pels miss the mark. *See, e.g.*, *Belluomini*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013) ("The California Constitution and the common law both set a high bar for an invasion of privacy claim. Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."). As with the others, this claim should be dismissed with prejudice.

### F.  Plaintiffs Baron and Pels Fail to Allege any Violation of California's UCL.

Finally, Plaintiffs Baron and Pels assert two claims under California's UCL for alleged violations of unfair and unlawful business practices. Both claims fail.

### 1.  Plaintiffs Fail to Allege an Inadequate Remedy at Law.

Separate from Baron and Pels' lack of standing (*supra* § 1(A)(1)(C)), their UCL claims independently fail because their claims are equitable in nature. Plaintiffs, therefore, were required—but failed—to allege that they are entitled to but lack an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2, 844 (9th Cir. 2020) (explaining that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL").  In addition to failing to establish their entitlement to any remedy at all, Plaintiffs fail to even allege they lack an adequate legal remedy.

### 2.  Plaintiffs Fail to Allege an "Unlawful" Business Practice.

A UCL claim for an "unlawful" business practice permits a plaintiff to

"borrow" violations of other laws and treat them as independently actionable under the UCL. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). Plaintiffs' unlawful business practice claim relies on supposed violations of California's data breach statute; the CCPA; the California Consumers Legal Remedies Act; the California Financial Information Privacy Act; the California Financial Code; and the California Constitution. (Am. Compl. ¶ 151.) But, Plaintiffs do not allege what any of these laws require and how Syniverse did not meet any specific legal requirements.[20] Plaintiffs' laundry list of laws and regulations with nothing more—particularly without any specifically alleged violations of these laws—is insufficient to state a UCL claim for "unlawful" activity. *See Twombly*, 550 U.S. at 555 (explaining a plaintiff's "obligation to provide the grounds for [their] entitlement to relief," which "requires more than labels and conclusions.").

3. Plaintiffs Fail to Allege an "Unfair" Business Practice.

In support of their "unfair" business practice claim, Plaintiffs allege that Syniverse solicited and collected Baron's and Pels' "private communications," and stored these communications in an unsecure environment. (Am. Compl. ¶ 157.) Plaintiffs also allege that Syniverse did not "take proper action" after the Data Incident. (*Id.* ¶ 158.) Plaintiffs then recite the requirements for an unfair business practice claim in conclusory fashion and simply claim it to be met here. Once

---

[20] Notably, Plaintiffs Baron and Pels asserted a standalone CCPA claim twice before, in their initial complaint (Doc. 1 at 34) and in the first consolidated complaint (Doc. 22 at 46). Syniverse moved to dismiss the CCPA claim and, in response, Plaintiffs dropped the claim. (*See* Doc. 32 at 28-30; Doc. 38.) It strains credulity for Baron and Pels to now allege a CCPA violation as the basis of their UCL claim when they raised the claim twice and then abandoned it.

again, this is insufficient pleading lacking any factual support, and it warrants dismissal of this UCL claim. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020) (affirming the district court's dismissal of the UCL claim, in part because plaintiffs "assert in a conclusory fashion that CVS's conduct 'outweighs any justification, motive or reason therefor,' but they do not allege how that is so.... [Plaintiffs] allege no facts that would support their position, and their conclusory recitation of one of the UCL's legal standards does not clarify what conduct they claim is unfair, or on what allegations in the complaint [they] rely for this claim. The claim is not adequately pled....") *cert. granted in part*, 141 S. Ct. 2882 (2021)*, and cert. dismissed*, 142 S. Ct. 480 (2021).

## CONCLUSION

Plaintiffs' latest Amended Complaint must be dismissed because Plaintiffs lack standing to bring claims against Syniverse.  Under a facial attack, Plaintiffs fail to meet their burden to plead a basis for standing, and under a factual attack, the realities of the Data Incident confirm Plaintiffs cannot ever allege an injury-in-fact.  Finally, the Amended Complaint's pleading deficiencies provide an additional basis requiring dismissal.  Following four attempts to plead a viable claim, the dismissal should be with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Syniverse's counsel again conferred with Plaintiffs' counsel, but Plaintiffs do not agree to the relief requested in this Motion.